Good morning, your honors. Vince Bronco, Federal Defenders, on behalf of Mr. Avendano. In every case that has upheld the handcuffing of an individual at the border without probable cause, the government has proved one critical fact. That is, the handcuffing was brief and temporary. In this case, the government failed to prove that critical fact. Now, in supplemental letter briefs just filed, I believe on Friday, the government has suggested that this case should be remanded for the factual question on the duration of the handcuffing. This Court should not accept the government's invitation. The issue was properly raised and litigated below. The evidence introduced actually implies that the handcuffs were not removed when Mr. Avendano got to the security office. Third, the burden of proof was squarely on the government to prove the duration of the handcuffing below, and they failed to meet it. And finally, intervening probable cause does not purge the taint of Mr. Avendano's illegal arrest. Has anyone argued burden of proof before? Has anyone argued – did anyone argue burden of proof below? No. The government never raised the issue of burden of proof below. We specifically argued below that the handcuffing made this detention unreasonable. The government never below elicited testimony, specific testimony, for how long this was going on. Everyone below understood what the issue was. In fact, the district court ruled, and this is on page 89 of the excerpt of record, as far as the detention is concerned, the standard for determining whether a person is under arrest at the border is whether a reasonable person would believe that he's being subject to more than temporary detention. As pointed out by the defense, that is U.S. v. Bravo. U.S. v. Bravo was regarding the temporary and brief handcuffing of an individual at the border. This is what was being litigated in the case. In the government's motion papers filed in the district court, they devoted two and a half pages of argument regarding what the standard is for handcuffing at the border. And yet, when they get to the – the hearing on the issue, they don't elicit any facts as to how long this handcuffing was. The law of this circuit is clear that from, I believe – well, I know what it is. It's in Delgado-Vasquez, and that is the government bears the burden to show that a warrantless seizure does not violate the Fourth Amendment. Well, let's assume he was illegally arrested. Okay? The next question is, so what? Don't you have to get around the Manuel case? In order to develop your point? No. Manuel does not control in this case. In Manuel, the probable cause to arrest was developed before the actual detention took place. If you read Manuel, and I believe it's on page 911, the specific – the specific question raised by the defendant in that case was, was the ordering of the defendant's arrest prior to the development of probable cause, did that violate the Fourth Amendment? The facts of the Manuel case are very unique. What happened is this. The police were investigating the case, and they went to Manuel's house. At that time, they did not have probable cause to arrest. When they went to the house, they found out he was not there. The defendant claimed at that point the police ordered the arrest of Manuel at a different house. The police stayed at the house and did some investigation. There, they clearly obtained probable cause to arrest Manuel. Other agents at a different house, after this development of probable cause, went in and arrested Mr. Manuel. The case is clear. It quotes, probable cause was established before the actual – before the detention of Manuel. So Manuel doesn't establish this intervening probable cause doctrine. In fact, that is contradicted by the Supreme Court's case law outlined in Brown, Taylor, Dunaway, where basically you have a three-factor test, and that is temporal proximity from the illegal detention to the actual statements, intervening circumstances, and the purpose or flagrancy of the misconduct. To have this intervening probable cause – But it's not quite that simple if you look at what the Court said in Manuel. And there they're talking about Dunaway and Brown, and said the Court held that the focus for purposes of resolving the Tate issue in cases such as this one must be whether the defendant's incriminating statements were obtained by the exploitation of the illegality of his arrest. The illegal arrest has to be exploited in order to arrive at the statements. So what do you have to show exploitation in this case? Exploitation? Mr. – what is shown from the record in this case is Mr. Avendano, without probable cause, was taken to a security office handcuffed, and two and a half hours later, which is the next conduct, he's in a holding cell. Both continued – Right. But at that point, then the officers have discovered the kid's locked up in the box, and they know that that was his car, they know he was driving it. So they go down there, and that's when the interrogation takes place. So how is the assumed illegality of the arrest exploited by that statement of fact? Because it's his detention is why he's in the holding cell, not the search of his car, while – and not in handcuffs, while the car was searched and they found the people. Well, that's the exploitation, other than the fact he's in the cell. Let's say that he was – he was in the holding cell simply for holding. It hadn't been handcuffed. There's no argument that he was arrested. And then they do exactly the same thing. They go down and talk to him and say, hey, we found a kid's in your car. Do you want to talk to us? Well, but what's the difference? The theory behind it is a person that is just merely led to the security office. The handcuffs are removed, and it's, you know, consistent with the routine border crossing. So it's your point that once the arrest takes place, your burden is over. Our burden is over, and then it goes to the government to purge the Tate, and there has to be an intervening event that's not just probable cause, because that's never been accepted by the Supreme Court or directly accepted with analysis by this Court. And there is a difference between the two situations, meaning I do think that there's an exploitation of this detention if someone is immediately placed in the handcuffs or in a detention cell versus someone that is going through the regular border formalities when they are eventually confronted with the agents. I mean, the person that has had his constitutional rights violated, I believe, and I think this is one of the reasons for the exclusionary rule, is more susceptible to make a confession in that case. He has his rights have been exploited. That is fundamentally different from a person whose rights have not been exploited. And there has to be something that has been accepted by the Supreme Court or this Court as an event that would purge that Tate. And those type of events that have been recognized are such as things like release from custody, being able to speak to an attorney, an appearance before a magistrate judge. In Taylor, almost an identical situation was encountered. In Taylor, the person was – while the person was in custody, the agents developed fingerprint evidence that developed actually probable cause. They took that evidence before a magistrate judge, got the magistrate to sign an arrest warrant, and then went to interrogate Mr. Taylor. The Supreme Court says, no, that's not an event that purges the Tate of the initial illegal custody. What difference, however, that was while the interrogation was taking place that they came in. Actually, I'm almost positive, and I can't cite the exact page in Taylor, but I believe Taylor is clear the incriminating statements in that case did not come out until after they had gotten a warrant from the magistrate. So before at least the incriminating statements or at least part of the statements came out, the intervening act had taken place. So the timing is the same here as in Taylor. Well, except that he was being interrogated in Taylor at the time it came out. Well, I believe there's just two different interrogations, meaning there was some statements at the beginning and some statements later. And the intervening probable cause came in between these two statements, not just one continuous interrogation. You know, I think that would be the same thing here as if right when he got into security office, if some questions were asked, obviously those would be suppressed, but also the later statements, either confirming or denying those statements. Moving on. Just for me, I'm the facts that are in the record are a little confusing to me because we have he was taken in handcuffs and put in this office, right? And the next thing we know, he's in a holding cell still with handcuffs. Is that right? Correct. But I would actually argue there is evidence in the record from the motion hearing which would suggest that at least the arresting agent, Agent Haynes, did not remove the handcuffs. And I direct the Court's attention to the end of his testimony, which is on page 56 of the excerpt of record. Basically, what happened is the prosecutor went through a detailed account of what the exchange and everything that happened between Mr. Avendano and Inspector Haynes. At the end of this, the prosecutor asked, is that the extent of your contact? Yes. Once you put him in the security office, yes. Then on cross-examination, at one point during cross-examination, the questions were asked. You escorted him to the secondary inspection area, yes. What happened when you got there? I walked him into the office. They call 02. At that point, I handed him off to an immigration officer, and then I went outside to see what was transpiring with the vehicle because someone else drove the vehicle. This agent had two specific times to testify if there was anything else he did in regards to Mr. Avendano about removing the handcuffs. And being asked by the prosecutor, is that the extent of your contact? And what happened when you got to secondary? He didn't. So I think there's an inference from this record that these handcuffs weren't removed when he got there. And so that he was in handcuffs the entire time that his car was being searched? I think that that inference is there, or he was taken then directly to the holding cell. The problem is, we don't know what happened after this handing off to this immigration officer in secondary inspection. I believe, and again, this goes to the burden of proof, which lies with the government. And if they had evidence that these handcuffs were removed, the time to present that evidence was at this hearing because they carried the burden there. I don't think that after full – after the motion hearing where the district court understands the issue, after full briefing on this case, opening brief, prior brief, their brief, then in response to a question by the court, for them now to say, oh, wait, we missed something, I think they've waived that. They've been contending this whole time. They produced sufficient evidence. They shouldn't do it the eve of oral argument, be able to completely change their argument and say, oh, no, we have to remand so we can have a chance to figure out what happened in the first place. At what point is it your contention that the arrest took place? The arrest took place when he was taken to the security office and the handcuffs were not removed. And on this record, there is no evidence that the handcuffs were removed. In fact, the implication is they remained on him. And is it in the ordinary course with the brief detentions, they stop someone at the first inspection, notice something awry, and then take them over to secondary and they don't, I mean, if they handcuff them, it's just to get them over to secondary, but then they take the handcuffs off and they just sit there. Meanwhile, the car or whatever goes to get inspected. We don't know that for sure. I mean, just looking at some of the cases that were cited in the briefs, RRAA is a case where the person was handcuffed in the security office. The same thing happened in Hernandez. The individual was re-handcuffed in the security office. There's nothing that – I don't think you can simply assume that this person – yeah, that the agents take these handcuffs off. If you – there's nothing in the record to make that assumption. We know cases from this circuit where handcuffs are employed in the security office. You know, if that's the case, the government should have proved it. I – just the other day, or yesterday, in fact, I was reading a case, a briefs, where they didn't have any reasonable suspicion at all, the district court found, to handcuff this person, to take them in the security office, and now the government's arguing based on Manuel that, well, who cares if we didn't have reasonable suspicion. We found drugs in the car later on. Any taint is purged. I think what the government – they need to be saying today, we're not going to escort anyone to the secondary without reasonable suspicion, but tomorrow they're going to be saying, well, we can handcuff anyone we want at any time, as long as we find something in the car later on. We can use any evidence from this person we want. And I don't think that's what intervening probable cause or intervening in acts is supposed to mean. There is the Constitution at the border, and this Court needs to enforce it in some way. Now, moving to the aiding and abetting question, I'll just talk briefly on that. One, the circuit is clear. If an element is necessary to convict, it's also necessary to indict. Also, it's clear even implied elements must be in an indictment. The first case is Hill, the second case is Debeau. It's also clear that aiding and abetting contains an additional element of specific intent to facilitate the commission of a crime by another. Judging by that, specific intent must be in an indictment, must be alleged in an indictment. If not, it's a fatal flaw that requires reversal. The government has cited many cases that have said aiding and abetting is implied in every indictment, but in none of those cases can the government tell you whether or not the specific intent was alleged in that indictment. And also, one of the cases, that is Armstrong, specifically notes that the issue that's raised here, a challenge to the indictment, was not raised in that case. Most of these other cases are just regarding can it be submitted to the jury. In most cases, it may be that Section 2. Roberts. Roberts. In Armstrong, they made the same argument that you seem to be making here, that the government amended the indictment by going to aiding and abetting arguments. That was just amended the indictment with the instructions to the jury. Armstrong specifically notes that the defendant is not making a challenge to the indictment. And that's what Mr. Avendano is doing. He's saying this indictment is deficient for failing to allege an element. Now, I agree. The law changes once you're in trial and haven't made this objection. It may, if you don't make this objection during or before trial, it may be permissible to submit this issue to the jury. But when a defendant objects before trial to an element of the offense and it's not in there, the case law is clear. This Court must reverse. I'd like to save the remaining time. The count that was dismissed was count one. That's the one that had the aiding and abetting mentioned in the indictment. Correct. But count two, to which your client pled guilty, did not have anything about aiding and abetting in it. Correct. So how here we have a guilty plea to count two that has nothing about aiding and abetting in it. How is there any violation? I can provide the specific case site and name to the Court, but you have to remember this is a conditional plea. And what a conditional plea allows you to do is preserve your pretrial motion. And if you're successful on the exact issues that you've preserved, you can go back and basically withdraw your guilty plea. So the way it worked, if Your Honors ruled that the district court should dismiss this count, we would then go back, be allowed to withdraw our plea to count two, and count one would be dismissed. There's a site directly on point from this circuit that if you plead to a different count with a conditional plea, it still preserves your issues for the other count. I don't have the exact case law, but I know it exists. And I can provide that by the end of the week. I'm up here tomorrow, so I can't get it to you tomorrow. So your answer to the question of why do you need to specifically allege aiding and abetting in the indictment, and we've got the statement in Armstrong and other cases that said that's implied in every Federal indictment for a substantive offense, you're saying that's dictum in every one of those cases? As to the specific question of does the element need to be alleged, I think there's a difference. And first of all, when they say that, is the term aiding and abetting the offense, aiding and abetting, does it need a decent? Does the government need to say aiding and abetting those specific words in the indictment? Does it need to cite the aiding and abetting statute? And those are what all those cases are talking about. No. But they – none of those cases say relieve the government of proving the additional element of aiding and abetting. Well, that seems to me that that doesn't get to the point. In other words, if you don't need to allege it because it's implied, because that's what those cases say. Well, they say you don't need to allege it for it to be submitted to the jury if you haven't objected during trial or before trial. Here you have a pretrial. Why do you need to object before trial if it's already implied? Because Hill directly states if an element is necessary to convict, it is also necessary to indict. You don't have to say that's victim Hill. I don't think you can do that. If an element is necessary to convict, and it's clear that this is, it has to be in the indictment. Hopefully, Your Honor, you will let me at least have a minute of rebuttal if I need it. Good morning, Your Honors. Patrick O'Toole on behalf of the United States. While I'd like to spend most of my time talking about the handcuffing issue, I think I'll start off with the aiding and abetting issue. What the defense is asking Your Honors, this panel, to do is to overrule Armstrong, Ramirez-Martinez, Angwin, and I think Gaskins, all four cases which hold that aiding and abetting is implied in every federal indictment. He's asking you to overrule all of those cases because he contends that while it's implied in every indictment, it has to be charged because it's a specific intent offense. Not a specific intent offense, but because it has a specific intent element. Now, there is tension between those two. It is a specific intent element according to Ninth Circuit law, but all of those cases stand for the proposition that it's implied in every case. And the reason, the difference is aiding and abetting is not a separate offense. It's not a separate charge. It's a theory of liability, much like Pinkerton. And the government would never be obligated to have the grand jury specify the Pinkerton language in an indictment. But even if there is tension between the specific intent aspect of aiding and abetting and all four of those cases that hold that it's implied in every indictment and it doesn't have to be specified, this is not the case for this Court to resolve the issue because Judge Hugg was absolutely correct. If he had entered a conditional plea to count one, which alleged aiding and abetting, then the issue would be right. But the count that he pled guilty to, count two, does not have aiding and abetting. In other words, it simply charged the defendant with bringing in aliens, not with bringing in aliens for money. And the count that he pled guilty to, because it does not have an aiding and abetting element, it's simply not right. Yes, he had his conditional plea, but the issue is not right as to that count. And it would be, I just don't think it would be right for this Court to overrule four different Ninth Circuit cases on point that it's implied in every issue in a case where it is not right because the count of conviction where it matters simply does not involve Title 18 United States Code, Section 2. I happen to think that the theory of liability does not require it to be specifically pleaded before the grand jury regardless, but that issue, there is tension between the two and that issue will be back before the Court, but it shouldn't be up on a conditional plea to a count that simply does not involve Title 18 United States Code, Section 2. Now, the most important thing I want to address in the handcuffing, Judge Warlaw, you asked, was the defendant in handcuffs when he was interrogated? And I'm not sure what the defense, because I almost jumped out of my seat, but I'm not sure what defense counsel said, but it is absolutely clear that he was not. He was not in handcuffs at the time that he was being interrogated by the officer. And the reason that, and my record site for that is ER 11, ER 11 to 13. Three separate points in time, the interrogating officer said he was not handcuffed. Now, that's important primarily because I submit that what happened in this case, while we don't know it exactly, this case was no different than Bravo, no different than Hernandez, no different than Zaragoza, and no different than Nava. Customs policy is that they are handcuffed during the primary walkover to the secondary office where the handcuffs are removed. And that's what happened in all three of those other cases. We don't know for a fact that it happened here, but we do know for a fact that he was handcuffed for security reasons for the walkover. The inspector couldn't be more clear. Here's what we have. ER 54 to 56, handcuffed for safety and security reasons. I had to escort him to secondary. I didn't want to have to wrestle with him or chase him through the traffic in primary. I was also concerned about his running back to Mexico. I put him in the secondary office, ER 56, that's all ER 54 to 56. Well, it only stands to reason this. If you're handcuffing him for security reasons so he won't run away or so you won't have to wrestle with him at pre-primary and primary, and you're handcuffing him because you want to get him over to the secondary office. Once you get him over to the secondary office and you turn him over to another inspector, there's no reason to have him handcuffed anymore. In other words, the inspector didn't say, I handcuffed him because we wanted to secure him at primary and because I wanted to make sure he was secured in the secondary office. It was simply one reason. When he's out in the general public and before we get him to a secure location, we had to make sure he was secured by the handcuffing. So we know that the reason for handcuffing him was gone. That's clear. We also know when the interrogating officer came to speak to him, he wasn't handcuffed at that point. I think it's clear that what happened. So he had to have been, the handcuffs had to have been removed in the meantime. Now the only question is as to when. Since the reason for the handcuffing was gone, and that's the reason that he was the same as every other case, which was the handcuffs were removed once they got him into the office. But I don't think this panel should guess on that. Is that necessarily reasonable? Getting him into the office is not secure as getting him into the cell. Well, I don't think he was put into the cell for some period of time, but our record is silent. And yes, Your Honor, I would agree, it's not as secure, but that wasn't the stated reason for the handcuffing. In other words, accepting what the inspector said, we handcuffed him because we don't want him to run to Mexico, I don't want to wrestle with him. There's general traffic, his safety, my safety, and I wanted to get him to the office. That's the state of our record. Do we know how many people were in the office? No. We know that he did turn him over to another inspector, but here's the bottom line. The other inspector might not want to wrestle with him either. That's true. That would be different than policy, and I know because I've worked with customs. I mean, Bravo was my case. Nava was my case. I've worked with customs regarding what their policy is. But I don't think this panel should speculate. I don't think- I noticed also that when you say handcuffed, is that the way people are handcuffed? He was handcuffed, I believe, behind his back. But I mean- That way for us? I don't know. I think maybe that's a nervous mannerism of mine when I'm going to get handcuffed by a question. But rather than speculating and rather than guessing, fairness dictates that if that question matters, that it be remanded to the district court. Defense counsel- It doesn't matter, though. In other words, let's assume that he was handcuffed for transportation, got over to the office, and was not unhandcuffed. He stayed in the office for some period of time to the point where we could assume or conclude that an arrest had taken place. I understand. All right. Now, your opponent says that's the end of the discussion. No, it's just the beginning. The reason it's just the beginning- So tell me, he says that Hill – no, that's the indictment case. Manuel does not control because probable cause existed at the time of the arrest there. So on my hypothetical I'm giving you, the probable cause was discovered after his arrest. I understand. So what's your best case- Your Honor- That purges the problem? I have argued this issue six times, and finally, recently, this Court held in a published opinion as follows. United States v. Nava, 363 F3D 942. Judges Silverman, Gould, and Bea, if I'm pronouncing Judge Bea's last name correctly, unanimous opinion. We also agree with the government's alternative argument, that was my alternative argument, that the discovery of drugs in Nava's gas tank constituted intervening an independent probable cause to arrest him, irrespective of the legality of his detention. As we have explained, the border officials had the right to search the truck and remove the tank. The resulting discovery of the marijuana provided probable cause to arrest Nava. His subsequent interrogation was, therefore, not the fruit of an illegal arrest. Now, that's footnote two. Defense counsel is going to stand back up and say it's dicta. When this Court, that clearly says we also agree with the government's alternative argument. That specific, that recently, that's the government's best case. But if Nava didn't exist, Manuel is controlling. Manuel says as follows, I'm reading at page 912, two things. This case is totally different from Dunaway and Brown, because probable cause was amply established before the officers began their interrogation. That's here in the Manuel case. But wait, you're not reading the sentence that immediately precedes that, which is the tribal police may have ordered the appellant's arrest somewhat prematurely. But by the time he was actually arrested, the police plainly had probable cause to arrest him. So, what they're requiring in Manuel is probable cause for the arrest. And if, in fact, Actually, Your Honor, I did not read that sentence because it is not quite as good for me, but it's there. That's right. But what I was reading was Dunaway and Brown are distinguishable because, according to the court in Manuel. That's just distinguishing Dunaway and Brown on that precise ground. It's not, but really, the facts in Manuel are very distinct. I mean, they ordered his arrest, but they did have probable cause to arrest him. In this case, if, in fact, Avendano was in custody, they didn't have probable cause to arrest or under arrest. They did not have, the border patrol did not have probable cause to arrest him. Now, I, in Nava, a case which I completely disagree with, especially footnote two. I can see a narrow exception at the border because in Nava is a case that was at the border. Absolutely. And if the rule is at the border, given the circumstances where, and it's usually not the person, it's usually the vehicle. And I think we have a Supreme Court case now that says you can dismantle the whole vehicle if you want at the border. But, okay, so at the border, as a practical matter, the officers take the person that they have reasonable suspicion of into the security office. And they take the car somewhere else for a search. And if they come up with probable cause at that point, interrogating the person who was stopped seems, it seems more reasonable. In a different context, however, if you take this away from the border, I don't think there's any law in our country that says that the police can arrest you, Mr. O'Toole, and then go search around for probable cause to support that arrest. Your Honor, I would agree with that, and I think it is fundamentally different. You know, I'm, I think this case should be, frankly, resolved in unpublished affirmance. I'm not seeking any kind of authority that the government can go out willy-nilly arresting people and hopefully find probable cause in the meantime. What's fundamentally different about this issue is the border, and particularly this, and I think Your Honor just hit the nail on the head. The defendant, Mr. Avedon, he would not have been released anyways. I mean, he was being detained because his car was going to be searched at the border. So that's much different than away from the border where the question of whether you're holding the person at all, whether he's arrested or whether he's detained, really matters because most of the time you're free to go. He would not have been free to go. He was going to be detained regardless while his car was being searched. The only difference is, was he handcuffed briefly or was he handcuffed for a long period of time, and was the method of his detention different than we would otherwise want it to be? So I think Your Honor is actually correct. The critical fact here is that we're talking about the border, and Nava says what it, I mean, Manuel says what it says, you know, three different times, and Your Honor raises a good point. But Nava, and I respect the fact, Judge Worley, that you disagree with Nava, but it was unanimous opinion. This Court declined to take it in bank, and it's a holding. It's an alternative holding, but it says what it says. So at the border, that governs it. But I maintain my view, while this Court does not need to resolve the question of whether, how long he was handcuffed or not, because we can decide on independent intervening probable cause, I do think in fairness as to how this issue was raised, if it does matter, that a remand would be appropriate. Because the defense in its motion to begin with, it never alleged that he was handcuffed at all. We responded in our brief that the handcuff, in our, in our motion response, he simply said, Your Honor, look at me. But if you look at it, and I spent a lot of time where I wish I would have been preparing this argument with my supplemental response to the Court's question. I went through it painstakingly. If you look at his motion, it never alleges handcuffing at all. In our response, we say that the handcuffing was brief. He never contests anything to the contrary after that fact, that it wasn't brief or that he had been handcuffed this entire period of time. And, yes, while it is an interesting question of who has the burden of proof, I would resolve it this way. I cite a case law in my, in the supplemental briefing that the moving party normally has the burden of proof. And that, for example, in a case where they allege government action for a private search, they have to show that there was government action as part of a search. If it's the case that it is a warrantless search or a warrantless arrest, there's a preference for a warrant. So the government has to prove, if it's a warrantless search, that the warrantless search is justified, for example, by exigent circumstances or consent or something else. Or if there's a warrantless arrest, we have to normally justify it by probable cause. But the predicate question of whether there is a search at all or the predicate question of whether there is an arrest at all, that's the defense burden. And for him to show that there was an arrest in this case, he would have had to have shown, I wasn't free to go, I was handcuffed, and the handcuffing wasn't temporary. That would be his burden. And then once he established that, if we were trying to justify it somehow, then it would be our burden to somehow justify it. But I don't want to play games with the issue. It's too important. Fairness dictates, both counsels drop the ball. Mr. Brunkow wasn't, I could say because I wasn't counsel below, and neither was Mr. Brunkow. The question should have been asked. I think the district court judge probably thought that it was there, or he's thinking back to all these other cases that he hears. But fairness dictates more than speculation. And I welcome a remand if it matters. I'm pretty confident of which way that it would come out to be. But I would say that regardless of whichever, any time an issue like that matters, when it matters, it shouldn't be because defense counsel didn't ask, we didn't ask, the court assumed something. But if you look at their brief or at their argument, I think it's telling. They weren't contending when they were contending that he was under arrest, that he was under arrest because the handcuffing was extensive. It was the fact that he was handcuffed at all. And I read, this is ER 82 and 83, is defense counsel's argument. Mr. Avendotto was friendly and nonthreatening. The pat-down uncovered no weapons. Yet they handcuffed him and took him over to the secondary inspection office. It was not necessary to handcuff him because he was friendly and nonthreatening. The clear import of that is that their position was that he shouldn't have been handcuffed at all. And if they're going to come in after the fact and say, well, it's not just that he was handcuffed at all, but it was that he was handcuffed and he continued to be handcuffed, that should be their burden. Now, I'm not asking this Court to hold that, but if it matters, let's remand it and we'll find out one way or the other. One question I have is that when did one of these officers look this guy in the eye and say, you are under arrest? We don't know. That doesn't show in the record. I can tell you how it normally happens, but we simply don't have it in the record. The remand would show it. But the last thing I want to leave this Court with, handling the Bravo litigation myself, defense counsel knew because of Bravo that the probable cause issue and the arrest were gone. So what they said in their in their pleadings was that the issue wasn't probable cause for the detention, but whether the detention was otherwise unreasonable. And in my 28-year letter, I make the point, I do not contend and the government acknowledges that we cannot handcuff every — even if it's temporary, that we cannot handcuff everybody who comes across the border and that we cannot handcuff everybody who comes — is being referred to secondary, that when we handcuff — when we handcuff somebody, that that turns a detention and it makes it a non-routine detention. And it has to be justified by reasonable suspicion. That was the implicit holding in Bravo, and I think that point needs to be made clear, because I just don't think the government or anybody else should be suggesting that everybody can be handcuffed when they come across the border. But the district court judge found in this case that the discovery of the non-factory compartment provided for reasonable suspicion. So I don't want this Court to think that I'm advocating or we're advocating that everybody gets handcuffed. He was handcuffed because they discovered the non-factory compartment. And as a matter of fact, if we had known at that point in time that there was an arrest issue, which we didn't, I'm not a faulting counsel. There are a lot of cases down in the district court. But if we would have known that that was the issue, we would have taken the position that the discovery of the compartment was probable cause. I mean, when you're down at the border and somebody doesn't know exactly where he got the car, and he's acting nervous and unusual like he is, and you look under the car and you discover a metal compartment that's non-factory and you've worked as a border inspector for all those years, that's probable cause. But we don't have a finding of that and we didn't contend it because we didn't know that that was the issue because it wasn't raised in the pleadings. So problematic. The problem with the – that's why you and I agreed that it should not be the law that handcuffing is routine at the border when there's no – in the absence of reasonable suspicion. I agree with you. But that's what Nava holds, if you read it that way. Well, that was the facts in this case. There was no reasonable suspicion. He was handcuffed. He was – In Nava? In Nava. Oh, no, there was reasonable suspicion. You had a dog alert and I think you had some other facts. So there was reasonable suspicion. Yes. Now, the analysis didn't turn on it. And to the extent that this panel wanted to make that point, like I said, in my 28J letter, I spent a page and a half referring to the Bravo litigation where both in the appeal before the court and in response to the in-bank panel, I take the position that we cannot handcuff everybody who comes across the border. We cannot handcuff everybody who's referred to secondary. That when we do handcuff somebody, it doesn't make an arrest, but it makes it a non-routine detention and it has to be justified by reasonable suspicion. But our case here that we have before, we have reasonable suspicion in spades. The discovery of that non-factory compartment is reasonable suspicion. The judge made a specific finding on that. In fact, I think implicit with the judge is – well, the judge made a specific finding on that. And frankly, it constituted probable cause, but we didn't contend it because that particular issue hadn't been framed that way that it was an arrest that required probable cause. If you have any other questions, I thank you for – thank you very much for the time. Thank you. I'll try to be brief, but there's so much I need to respond to. As to whether or not this issue was preserved below and whether or not the exact question below, I direct the Court's attention to footnote 8 of Bravo. In that footnote, it actually says the reasonableness inquiry, which is the language that defense counsel used below, and the illegal arrest analysis, and these are quotes, were actually fused together. So the Bravo court itself dismissed that these are two different inquiries. These are two different inquiries intertwined together. As far as the footnotes in Nava, that is dicta under any definition of the term. It's not a holdup. No, I thought you would find specific authority from this Court, I think written by Judge Browning a long time ago, that when this Court gives an alternative ground for a decision, the alternative ground is not dictum. I have two answers for that. First of all, one of the – there's basically two competing definitions of dicta going on in this circuit. One is whether or not it's essential to the holding. It's obviously not essential to the holding because the holding of Nava was there was no illegal detention. The second point is the – How do we know that? Pardon? How do we know which holding we're talking about? Which holding, because it says we hold, and then in a footnote, without any analysis, without any citations to any case, it makes what I would consider under the second definition of dicta a casual remark. We also agree with this other theory. But there's no case citations to this other theory. But you also agree with this theory as an alternate holding. I don't believe it says alternate holding. I think it just says theory. I don't have the case. It's something like the government – we agree with the government's alternative argument. Argument. Something like that. It doesn't say we are also holding this or this is another basis to deny a motion. Usually when there's an alternative holding to a case, there's two different discussion sections. This is just a footnote without any citation whatsoever. But I also think it's fundamentally wrong, and without any analysis, it's inconsistent with the Supreme Court cases where you can't just focus on one factor. You have to have a multifactor test. But the exclusionary rule and the reasons why we have to reject that Nava footnote at the border particularly is there needs to be some protection there. I mean, the government's sitting here arguing that, yes, we need reasonable suspicion to handcuff, and, yes, we would need probable cause to handcuff permanently and place in a detention cell. But if they have this intervening probable cause doctrine, they wouldn't have to do either. For example, if someone would, without any reasonable suspicion, be handcuffed and taken directly to a holding cell, and then they find drugs in the car, they would be able to argue under this footnote that there's intervening probable cause, so that purges any taint. So there would be absolutely no protections for any violations of the person at the There needs to be some mental protections, and that protection is, if you don't have – if you don't have reasonable suspicion, then it's an illegal seizure. If you don't have probable cause for continued handcuffing and detention, it's an illegal arrest, and the Constitution would protect your statements if the statements come as a result. One last comment on the alien abetting issue. The government just talked about that it's implied in every indictment and that you'd have to reverse three or four different cases. None of those cases addressed the pre-indictment challenge to it. And I quote from the U.S. v. Jackson. All right. Counsel, just tell us the site and we'll find it. U.S. v. Jackson. Implied necessary elements not present in the statutory language must be included in the indictment. All right. Thank you very much. Counsel. Thank you. We will – U.S. v. Avendano is submitted, and the Court will adjourn to this session. Thank you.
judges: Hug, T.G. Nelson, Wardlaw